UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIUS WILSON,

        Plaintiff,                  CIVIL ACTION NO. 12-CV-15652

  vs.

                                    DISTRICT JUDGE PAUL D. BORMAN

MICHIGAN DEPARTMENT        MAGISTRATE JUDGE MONA K. MAJZOUB
OF CORRECTIONS, et. al,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:** This Court recommends that the motion for summary judgment filed by Defendant Ronnie Sorrow, D.D.S. (docket no. 25) should be **GRANTED IN PART AND DENIED IN PART**. Defendant Sorrow's motion should be denied as to Plaintiff's Eighth Amendment individual capacity claim and granted with respect to Plaintiff's Eighth Amendment official capacity claim.

**II.**    **REPORT:**

This matter comes before the Court on the motion for summary judgment filed by Defendant Ronnie Sorrow, D.D.S. (Docket no. 25). Plaintiff filed a response. (Docket no. 36). Defendant Sorrow filed a reply. (Docket no. 37). All pretrial matters have been referred to the undersigned for action. (Docket no. 6). The Court dispenses with oral argument on the motion pursuant to E.D. Mich. LR 7.1(f). The motion is ready for ruling pursuant to 28 U.S.C. § 636(b)(1)(B).

**A.**    **Facts**

Plaintiff prisoner filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 against

1

the Michigan Department of Corrections and three dentists, Dr. Sorrow, Dr. Davis, and Dr. Williams. Plaintiff is presently incarcerated in the Gus Harrison Correctional Facility in Adrian, Michigan; however, the events giving rise to the complaint occurred while he was incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan. On November 3, 2013 counsel appeared on behalf of Plaintiff. (Docket no. 34).

The complaint alleges that Plaintiff suffered irreparable nerve damage after Defendant Davis broke a needle off in his jaw during a routine tooth extraction and left it embedded in his gums for more than five months without providing adequate pain relief. (Docket no. 1, ¶¶ 5, 11). Plaintiff alleges that Defendant Sorrow failed to act swiftly to alleviate the pain caused by the embedded needle and to provide immediate medical assistance to remove his tooth and the needle. (Docket no. 1, ¶¶ 57-58). Plaintiff sues Defendant Sorrow for violations of the Eighth Amendment in his individual and official capacities. (Docket no. 1, ¶¶ 54-59; Docket no. 36).

The Court has dismissed Defendant MDOC and Defendant Williams. (Docket no. 32). At the same time, the Court has noted that the complaint fails to set forth any factual allegations against Defendant Sorrow. Despite the deficiencies in the complaint, this case has proceeded against Defendant Sorrow because he filed an answer to the complaint with affirmative defenses acknowledging that he was responsible for removing the broken needle from Plaintiff's jaw. (Docket nos. 24, 32). In his motion for summary judgment, Defendant Sorrow again states that he provided dental treatment and surgically removed the needle from Plaintiff's jaw.

**B.     Standard**

Defendant Sorrow moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is appropriate where the moving party shows that there is "no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**C.     Analysis**

In order to establish a claim under 42 U.S.C. § 1983, a plaintiff must allege that a right secured by the Constitution or a federal law has been violated, and that the violation was caused by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). Plaintiff asserts a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. "The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

To support a claim of deliberate indifference under the Eighth Amendment, a plaintiff must satisfy two components–an objective component and a subjective component. *Harrison v. Ash*, 538

F.3d 510, 518 (6th Cir. 2008). "Satisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.' " *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)).

To satisfy the subjective component of a deliberate indifference claim and establish that the defendant had a sufficiently culpable state of mind, a plaintiff must show that "the official knows of and disregards the substantial risk of serious harm." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 569 (6th Cir. 2013) (quoting *Harrison*, 539 F.3d at 518). The plaintiff need not prove, however, "that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.' " *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Instead, a plaintiff must show that (1) "the official being sued subjectively perceived facts from which to infer substantial risk to the [plaintiff]," (2) the official "did in fact draw the inference," and (3) the official "then disregarded that risk." *Quigley*, 707 F.3d at 681 (citation and internal quotations omitted).

For purposes of this motion, the Court accepts Plaintiff's assertion that his dental condition constitutes a serious medical condition. Therefore, the Court will consider the parties' arguments only in relation to the subjective component of the deliberate indifference analysis.

Both parties have submitted affidavits and copies of Plaintiff's medical records in support of their respective arguments. Defendant Sorrow's affidavit states that he is an oral surgeon who was contacted on October 27, 2011 to provide treatment to Plaintiff after a general dentist broke off a needle in Plaintiff's jaw during a failed wisdom tooth extraction. (Docket no. 25, ex. A). He states

that he extracted Plaintiff's right lower wisdom tooth on that date, but concluded that he should leave the needle in place to permit the area to encapsulate in scar tissue, a process known as "scarring in." He states that allowing the needle to scar in would minimize potential complications. He further states that he prescribed Motrin, Vicodin ES, Amoxicillin, and Peridex on that date.

Defendant Sorrow states that he next examined Plaintiff on November 29, 2011. He claims that during this visit he examined Plaintiff, explained the procedure to remove the needle and the reason for the delay, ordered a CT scan, and prescribed Ultram to relieve Plaintiff's discomfort. (Docket no. 25, ex. A). Defendant Sorrow states that his next examination of Plaintiff occurred on January 12, 2012. During this visit, Defendant Sorrow discussed the procedure for removal of the needle and identified potential surgical complications. He states that he prescribed Vicodin ES when Plaintiff complained that the Ultram he had previously been prescribed was not working to relieve his discomfort. Defendant Sorrow states that he surgically removed the needle on February 21, 2012 without complications and prescribed Motrin, Vicodin ES, Keflex, and Peridex. During a post-operative examination on March 15, 2012, Defendant Sorrow determined that Plaintiff was healing well without complications. He states that Plaintiff complained of discomfort but denied a need for specific pain pills. He also contends that Plaintiff complained of mild V3 paresthesia but could differentiate sharp from dull pain. The doctor states that as a consultant, he was unaware of any prison kites from Plaintiff requesting pain medication.

Plaintiff also submitted an affidavit. He states in his affidavit that Defendant Davis called Defendant Sorrow on October 17, 2011 to schedule emergency treatment to remove the needle from his jaw. (Docket no. 36, ex. A). He contends that Defendant Sorrow refused to see him until October 27, 2011, and he claims that the ten day delay in providing emergency treatment constitutes

deliberate indifference. Plaintiff states in his affidavit that Defendant Sorrow did prescribe Ultram and Vicodin, but only provided enough pills to last five days in each prescription. He states that he complained to Defendant Sorrow that the needle needed to be removed immediately and informed him that he was in excruciating pain. He states that Defendant Sorrow did not consider or treat the pain he suffered from the needle.

Plaintiff argues that Defendant Sorrow's decision to refuse him emergency treatment and delay treatment until October 27, 2011 constitutes deliberate indifference. He also argues that Defendant Sorrow's delay in scheduling the CT scan, delay in removing the needle, and failure to prescribe adequate pain medication rises to the level of deliberate indifference.

Medical records provided by the parties date from October 31, 2011 through March 23, 2012. (Docket no. 25, ex. B; Docket no. 36, ex. B). Consequently, the earliest medical record provided to the Court is dated after Defendant Sorrow initially treated and extracted Plaintiff's tooth. Neither party has provided medical records showing when Defendant Sorrow was first contacted and whether he was asked to provide emergency treatment on October 17, 2011. Likewise, the records provided to the Court fail to document the alleged follow-up examination on November 29, 2011. It was during this visit that Defendant Sorrow claims he examined Plaintiff, explained the difficulty of the procedure to remove the needle and the reason for the delay, ordered a CT scan, and prescribed Ultram to relieve Plaintiff's discomfort.

The medical records before the Court are devoid of any report showing that Defendant Sorrow removed Plaintiff's wisdom tooth and prescribed Motrin, Vicodin ES, Amoxicillin, and Peridex on October 27, 2011. In fact, the first treatment note provided by Defendant Sorrow is dated January 12, 2012. It was during this visit that Defendant Sorrow claims to have identified potential

surgical complications and prescribed Vicodin ES to replace the Ultram prescription that allegedly was not effective in relieving Plaintiff's pain. While difficult to decipher, Doctor Sorrow's January 12, 2012 treatment note does not document the Vicodin or Ultram prescription. (Docket no. 25, ex. B). Interestingly, pre-operative notes dated February 21, 2012 also do not suggest that Plaintiff was taking Vicodin, Ultram, or even Motrin prior to his surgery. (Docket no. 25, ex. B). In fact, pain medications are conspicuously absent from every medication listing contained in the record. Only one medication listing documented in a consultation request dated December 1, 2011 shows that Plaintiff was prescribed Motrin from November 18, 2011 through December 18, 2011. (Docket no. 36, ex. B). In addition, one medical record from the Bureau of Health Care Services dated January 24, 2012 makes a general reference to the fact that Plaintiff's Vicodin ran out. (Docket no. 36, ex B).

 The record shows that Plaintiff complained of discomfort, aching, and pain caused by the needle left in his jaw. (Docket no. 36, ex. B). At various times, Plaintiff rated his pain at a level eight and ten on a ten point scale. Plaintiff verbalized his pain complaints to the prison. It appears that Dr. Sorrow was also aware that Plaintiff was in some degree of pain. For instance, his operative report states that Plaintiff complained of pain and discomfort. (Docket no. 25, ex. B). Additionally, consultation requests dated December 1, 2011, December 15, 2011, January 12, 2012, and January 13, 2012 each state that Plaintiff was in pain due to the needle in his jaw. (Docket no. 36, ex. B).

 Other than his affidavit, Defendant Sorrow has not submitted any evidence showing that he wrote Plaintiff prescriptions for Vicodin, Motrin, or Ultram. Plaintiff has acknowledged that Defendant Sorrow prescribed Vicodin and Ultram, but he argues that the prescriptions were for limited periods of five days each. The undersigned suggests that genuine issues of material fact exist

7

as to whether Defendant Sorrow knew the extent of Plaintiff's pain and needlessly allowed him to suffer. *See Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976) ("a prisoner who is needlessly allowed to suffer pain when relief is readily available [has] a cause of action against those whose deliberate indifference is the cause of his suffering.").

Plaintiff also argues that the delay in ordering the CT scan and removing the needle constitutes deliberate indifference. With respect to these issues, the record shows that a CT scan was taken on or around December 13, 2011. (Docket no. 36, ex. B). It also shows that the prison dental department made multiple requests to the Allegiance Surgery Department for a surgical date for Plaintiff. (Docket no. 36, ex. B). The record does not show whether Defendant Sorrow was aware of the requests made by the prison dental department or whether the doctor had control over when Plaintiff's surgery was scheduled. The Court concludes that triable issues of fact remain with respect to Plaintiff's Eighth Amendment individual capacity claim against Defendant Sorrow.

With respect to Plaintiff's Eighth Amendment official capacity claim against Defendant Sorrow, there is no factual support or evidence showing that a policy, custom, or procedure caused a deprivation of his Eighth Amendment rights. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) (official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Garner v. Memphis Police Dep't,* 8 F.3d 358, 363-64 (6th Cir. 1993) (to establish an objective capacity claim under section 1983, a plaintiff must identify a policy at issue, connect the policy to the defendant and show that the particular injury was caused because of the execution of that policy). Consequently, Plaintiff's official capacity claim against Defendant Sorrow should be dismissed.

### III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: January 31, 2014         s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

9

I hereby certify that a copy of this Report and Recommendation was served upon Julius Wilson and Counsel of Record on this date.


Dated: January 31, 2014            s/ Lisa C. Bartlett
                                   Case Manager