UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIUS WILSON,

      Plaintiff,              CIVIL ACTION NO. 12-cv-15652

      v.                            DISTRICT JUDGE PAUL D. BORMAN

MICHIGAN DEPARTMENT        MAGISTRATE JUDGE MONA K. MAJZOUB
OF CORRECTIONS, et al.,

      Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff filed this *pro se* civil rights action on December 26, 2012, pursuant to 42 U.S.C. § 1983 against the Michigan Department of Corrections (MDOC) and three dentists, Dr. Sorrow, Dr. Davis, and Dr. Williams.[1] (Docket no. 1.) This matter comes before the Court on Defendant Dr. Stephen Davis, DDS's Motion for Summary Judgment. (Docket no. 54.) Plaintiff responded to Defendant's Motion (docket no. 56), and Defendant replied to Plaintiff's Response (docket no. 57). This action has been referred to the undersigned for all pretrial purposes. (Docket no. 6.) The Court dispenses with oral argument on the motion pursuant to Eastern District of Michigan Local Rule 7.1(f) and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons that follow, it is recommended that Defendant Dr. Stephen Davis, DDS's Motion for Summary Judgment (docket no. 54) be **GRANTED**.

---

[1] The Court dismissed Defendant MDOC and Defendant Williams from this action on September 23, 2013. (Docket no. 32.) On November 3, 2013, counsel appeared on behalf of Plaintiff. (Docket no. 34.)

## II.     REPORT

### A.     Background

Plaintiff is currently on parole; however, the events giving rise to the complaint occurred while he was incarcerated at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan. Plaintiff alleges that he suffered irreparable nerve damage after Defendant Davis broke a needle off in his jaw during a tooth extraction and left it embedded in his gums for five months without providing adequate pain relief. (Docket no. 1, ¶¶ 5, 11.) Plaintiff sues Defendant Davis for violations of the Eighth Amendment in his individual and official capacities. (Docket no. 1 ¶¶ 54-59.)

#### 1.     *Plaintiff's Claims and Allegations*

In his *pro se* Complaint, Plaintiff alleges that he went to JCF's dentist on October 17, 2011 to have a tooth extracted, and in the process of numbing the extraction area, Defendant Davis broke the needle off in his gums. (*Id*. ¶ 11.) Plaintiff says that Defendant Davis had x-rays taken to locate the broken needle and then sent Plaintiff to Allegiance Hospital in Jackson, Michigan to have the needle removed. (*Id*. ¶ 12.) According to Plaintiff, there was no oral surgeon available at that time, so he was sent back to JCF. (*Id*. ¶ 12.) Plaintiff claims that upon his return to JCF, Defendant Davis immediately attempted to contact an oral surgeon at the Michigan Department of Correction's (MDOC's) Duane Waters Hospital, and the Hospital scheduled an appointment for Plaintiff for October 27, 2011. (*Id*. ¶ 13.)

Plaintiff alleges that he asked Defendant Davis for something to relieve his pain, but he was not given any pain medication and was in "horrible, terrible pain." (*Id*. ¶ 18.) Plaintiff avers that he could not eat, drink anything cold, or sleep. (*Id*.) Allegedly, after being in extreme pain for two days, on October 19, 2011, Plaintiff sent a kite to Health Care Services to request help

for his pain. (*Id*. ¶ 14.) Plaintiff asserts that he received a response to his kite on October 21, 2011 that explained that Plaintiff was "on the list to see the MSP, but no specific date [was] available." (*Id*.) Plaintiff claims that he did not receive any pain medication. (*Id*. ¶ 15.)

According to Plaintiff, he "was seen" on November 2, 2011, but no pain medication was administered. (*Id*. ¶ 19.) Plaintiff admits that he was offered Motrin, but he refused it because "[i]f something is useless, you simply do not take it." (*Id*.) Plaintiff indicates that he sent another kite on November 8, 2011 to inquire about his appointment with an oral surgeon, and he received a response the next day informing him that he had an upcoming appointment to remove the needle from his gums. (*Id*. ¶ 16.) He claims that he did not receive pain medication and that he was in "horrible, agonizing pain with no relief." (*Id*.) Plaintiff alleges that he had a CT scan on or about December 13, 2011, but he still had no pain management or medication, and the needle had become infected. (*Id*. ¶ 17.)

Plaintiff avers that he received a letter from Physician Assistant Aryan K. Taymour on January 24, 2012 that stated that surgery would be too painful under local anesthesia and that surgery had not yet been scheduled, but it should be scheduled soon. (*Id*. ¶ 24.) Plaintiff alleges that at that point, it had been four months since the needle was broken off in his gums, and he had received no pain medication at all. (*Id*.) Plaintiff claims that Tylenol and other over-the-counter medications were insufficient and useless. (*Id*.)

Next, Plaintiff allegedly sent several more kites. He sent a kite for pain medication because the pain medication he did have ran out on January 18, 2012. (*Id*. ¶ 25.) He sent a kite to inquire when his surgery would take place and allegedly received a response that his appointment had been cancelled. (*Id*. ¶ 26.) He sent a kite on February 6, 2012 to inquire about pain medication. (*Id*. ¶ 27.) Allegedly, Plaintiff then had an appointment with a nurse, who told

3

him that no pain medication would be given, offered him Tylenol, and told him to endure until surgery. (*Id*.) Plaintiff claims that he had another appointment with a nurse on February 12, 2012, who told him that there was nothing he could do. (*Id*. ¶ 28.) Plaintiff asserts that he was in so much pain and agony at that time that he could hardly stand it. (*Id*.)

Plaintiff alleges that he awoke on February 13, 2012 and believed that the needle had shifted because he could not eat or sleep well and he didn't feel comfortable talking to anyone. (*Id*. ¶ 29.) According to Plaintiff, a prison officer contacted Health Care Services on behalf of Plaintiff and was told that there was nothing they could do besides offer Plaintiff Ibuprofen 200mg, which Plaintiff asserts "is useless." (*Id*.) Plaintiff claims that he should have been taking Vicodin or morphine because the pain was so bad. (*Id*.) Plaintiff alleges that he had surgery to remove the needle on February 21, 2012 but that he continued to have pain, heaviness, and numbness in his jaw up to three weeks later. (*Id*. ¶¶ 30-31.)

### 2. *Plaintiff's Medical Evidence as Related to Defendant Davis*

Defendant Davis has offered a summary report generated by the MDOC and other medical records that document Plaintiff's medical care as rendered by Defendant Davis:

- October 17, 2011: Plaintiff presented to Defendant Davis complaining of a toothache. Defendant Davis evaluated Plaintiff's tooth and recommended extraction. While Defendant Davis was issuing lidocaine to Plaintiff, the needle broke off at the hub. According to the report, an x-ray was taken, and an oral surgeon, Defendant Dr. Sorrow, DDS, was contacted, who advised that Plaintiff should be sent to the emergency room at Allegiance Hospital. Defendant Davis found that Plaintiff was not in distress due to the broken needle and had no difficulty opening or closing his mouth. Plaintiff's tooth was not removed.

- October 18, 2011: Plaintiff saw Defendant Davis for a follow-up appointment regarding the preceding day's events. Defendant Davis noted that Plaintiff continued to have pain originating from the tooth that was scheduled for extraction and that Plaintiff had received an injection of Toradal, an analgesic, from medical the night before. Defendant Davis recommended antibiotics and a follow-up appointment in two days. The report stresses that Plaintiff declined Motrin that day because he said that it didn't work for him. Defendant Davis requested Vicodin ES and Motrin 800mg for Plaintiff per Defendant

4

Sorrow's instructions. This request was approved by Elizabeth T. Phillips, DDS an hour later.

- October 21, 2011: Defendant Davis evaluated Plaintiff's tooth and noted a slight sensitivity to percussion with no swelling and no opposing occlusion. He evaluated the right angle of Plaintiff's mandible and noted that there was no swelling or erythema. Defendant Davis concluded that Plaintiff did not appear to be in distress or unable to sleep. Lastly, Defendant Davis acknowledged Plaintiff's complaints of pain but that Plaintiff was requesting pain medication stronger than Motrin.

- October 24, 2011: Defendant Davis examined Plaintiff and again concluded that Plaintiff didn't appear to be in major distress despite his complaints of pain. Defendant Davis noted that Plaintiff declined Motrin because it didn't work for him. Defendant Davis noted a lack of swelling near Plaintiff's tooth or along the angle of the right mandible.

- October 27, 2011: Plaintiff was seen by Defendant Sorrow, who extracted Plaintiff's tooth. The record indicates that a follow up would be needed in one month to evaluate the location of the needle.

- November 2, 2011: Defendant Davis evaluated Plaintiff's tooth extraction site and found that it was healing slowly, but within normal limits. He found that the soft tissue along the right angle of the mandible where the needle was broken off appeared normal in color with no swelling present. Plaintiff did not request pain medication from Defendant Davis, as he had pain medication prescribed by the oral surgeon.

- November 9, 2011: Plaintiff told Defendant Davis that he had felt something sharp along the right angle of the mandible that could be the needle, but he didn't feel it at that time. Defendant Davis found that the mandible tissue was within normal limits with no swelling and no physical evidence of a needle. Defendant Davis took radiographs to determine the needle location, but was unsuccessful in doing so. Defendant Davis prescribed Ibuprofen 200mg to Plaintiff.

- November 18, 2011: Defendant Davis requested Vicodin ES and Motrin 800mg for Plaintiff per Defendant Sorrow's instructions. This request was approved by Elizabeth T. Phillips, DDS on November 21, 2011.

- November 22, 2011: Defendant Davis found that Plaintiff's mandible tissue was colored within normal limits without inflammation or swelling. Plaintiff told Defendant Davis that he occasionally felt something uncomfortable when moving his jaw. Defendant Davis noted that Plaintiff's surgery for the needle removal had been scheduled.

- November 29, 2011: Defendant Sorrow evaluated Plaintiff and ordered a CT scan to determine placement of needle.

- December 7, 2011: Defendant Davis evaluated Plaintiff's complaint of a bone or tooth fragment near the site of his recently extracted tooth and removed a small, bony, loose

5

spicule with topical anesthetic. Defendant Davis noted that the right angle of the mandible showed no sign of infection or inflammation.

- January 3, 2012: Plaintiff complained to Defendant Davis of pain in his right mandible, especially when he slept on his right side. Plaintiff said that the pain during the day time was sporadic and not continuous. Defendant Davis examined Plaintiff and found that the right mandible tissue was within normal limits with no swelling but that there was a tender, calloused area, which was possibly a result of the needle. Plaintiff complained to Defendant Davis that the Motrin 400 mg he was taking for pain upset his stomach and that the Tylenol didn't work. Defendant Davis noted that the Motrin was prescribed by Dr. Jenkins in medical and told Plaintiff to send a kite to medical for alternative pain medication.

- February 13, 2012: Defendant Davis consulted with Plaintiff regarding his upcoming needle-removal surgery.

- February 21, 2012: Plaintiff had surgery to remove the needle from his gums. Defendant Davis requested Vicodin ES and Motrin 800mg for Plaintiff per Defendant Sorrow's instructions. This request was approved by Elizabeth T. Phillips, DDS on February 23, 2012.

- February 23, 2012: Defendant Davis completed a post-op evaluation of Plaintiff and noted that Plaintiff was healing fairly well with some moderate swelling along the surgical area. Defendant Davis contacted the pharmacy and received approval for Plaintiff's pain medication and told Plaintiff that he would be receiving his pain medication soon.

(Docket nos. 54-2 and 54-3.) Defendant Davis continued to provide dental care to Plaintiff through April 2012. (Docket no. 54-2.)

### B. Governing Law

Defendant Davis moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket no. 54.) Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

**C.     Analysis**

To prevail on a § 1983 claim, a plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citations omitted). There is no dispute that Defendant Davis was a person acting under color of state law. Thus, the only remaining issue under a § 1983 analysis is whether Defendant Davis deprived Plaintiff of a constitutional right.

Plaintiff asserts a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. "The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citing *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)).

To support a claim of deliberate indifference under the Eighth Amendment, a Plaintiff must satisfy two components: an objective component, and a subjective component. *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (citing *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). "Satisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant . . . acted with a sufficiently culpable state of mind.'" *Quigley v. Toung Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)).

### 1. *The Objective Component*

To satisfy the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994))). A sufficiently serious

medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (citations omitted).

Plaintiff alleges that he "seriously suffered for [f]ive long months waiting to have a broken needle extracted from his jaw, while no pain medication was administered that actually worked, leaving Plaintiff in serious and dangerous pain for a [m]an nearly 60 years of age." (Docket no. 1 ¶ 36.) Indeed, "[c]ourts have regularly held that pain can be a 'sufficiently serious' medical need for purposes of a deliberate indifference claim." *Burton v. Kakani*, No. 09-10893, 2011 WL 3330370, at *4 (E.D. Mich. Aug. 3, 2011) (Battani, J.) (citing cases). Defendant neither sets forth his position nor disputes Plaintiff's position regarding this component. Thus, for purposes of this motion, the Court accepts Plaintiff's assertion that the pain he suffered as a result of his dental condition constituted a serious medical need.

## 2. The Subjective Component

To satisfy the subjective component of a deliberate indifference claim and show that the defendant had a sufficiently culpable state of mind, a plaintiff must show that "'the official knows of and disregards' the substantial risk of serious harm." *Villegas*, 709 F.3d at 569 (quoting *Harrison*, 539 F.3d at 518). The plaintiff need not prove, however, "that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 835). Instead, a plaintiff must show that (1) the defendant "subjectively perceived facts from which to infer substantial risk to the [plaintiff]," (2) the defendant "did in fact draw that inference," and (3) the defendant "then disregarded that risk." *Quigley*, 707 F.3d at 681 (citations omitted).

"In evaluating a deliberate indifference claim, '[w]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment.'" *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir. 1976)). Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Westlake*, 537 F.2d at 860 n.5 ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). "When a prisoner grounds a constitutional violation on inadequate medical treatment, his claim is viable only if he shows that the treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Burton v. Kakani*, 514 F. App'x 577, 579 (6th Cir. 2013) (quoting *Alspaugh,* 643 F.3d at 169). Ultimately, the court must consider the wide discretion allowed to prison officials in their treatment of prisoners under authorized medical procedures. *See Westlake*, 537 F.2d at 860.

Despite Plaintiff's allegations in his *pro se* Complaint, this is not a case where Plaintiff was completely denied treatment or pain medication. The undisputed medical evidence shows that Plaintiff received regular and appropriate medical treatment for his condition from Defendant Davis. Specifically with regard to pain relief, the record demonstrates that Plaintiff received an injection of Toradol on the day that Defendant Davis broke the needle off in his gums; Defendant Davis offered Motrin to Plaintiff on more than one occasion, which Plaintiff declined; Defendant Davis requested Vicodin and Motrin 800mg for Plaintiff on three separate occasions; Plaintiff declined medication from Defendant Davis on one occasion because he already had some as prescribed by the oral surgeon; Defendant Davis prescribed Ibuprofen to

Plaintiff once; and Defendant Davis instructed Plaintiff to send a kite to the medical department to seek alternative medication instead of the Motrin that the medical department had prescribed to him. (Docket nos. 54-2 and 54-3.)

Plaintiff, through counsel, clarifies his argument with regard to the subjective component of deliberate indifference in his Response to Defendant's Motion. Plaintiff asserts that Defendant Davis knew that Plaintiff was in pain, knew that there was a need for effective pain treatment, and intentionally disregarded Plaintiff's complaints of pain by refusing to prescribe any pain medication stronger than Motrin to Plaintiff because he believed that prisoners should not be given strong medication because they are prisoners. (Docket no. 56 at 6-7.) To support this argument, Plaintiff directs the Court to one page of the transcript from Defendant Davis's deposition in which Defendant Davis testified that he generally doesn't prescribe Vicodin "for most patients in that type of a setting because they tend to be drug seeking." (Docket no. 56-4.) When asked if a patient's history of drug abuse, such as Plaintiff's, was a factor in his decision to prescribe Vicodin, Defendant Davis replied that he "generally [didn't] give any controlled substance to any person in a prison because whether they are substance abusers or not, if they're not, they'll sell them." (*Id.*)

Plaintiff relies on non-binding case law from the Northern District of Illinois, the Seventh Circuit, and the Eleventh Circuit to further support his argument, but there are rulings from the Sixth Circuit and from courts in this District that are more applicable to the instant matter. First and foremost, a plaintiff's desire for different or stronger medications does not show that a defendant's chosen course of medical care constitutes a "reckless disregard for a substantial risk of human harm." *Christian v. Mich. Dep't of Corr.--Health Servs.*, No. 12-12936, 2013 WL 607783, at *6 (E.D. Mich. Jan. 28, 2013) (citing cases), *report and recommendation adopted*,

11

No. 12-cv-12936, 2013 WL 607779 (E.D. Mich. Feb. 19, 2013). In fact, the Sixth Circuit affirmed the dismissal of a prisoner's complaint as "clearly frivolous" where the prisoner alleged that he suffered pain from his serious back problems due to the defendants' refusal to provide anything beyond over-the-counter pain medication. *Moses v. Coble,* 23 F. App'x 391, 392 (6th Cir. 2001). Notably, in holding that the denial of prescription narcotics did not amount to a "wanton infliction of pain" given the prisoner's history of drug abuse, the Sixth Circuit reasoned that "[w]here the question is one of administering a highly addictive drug on a continuing basis in the prison setting, the prison staff should have some discretion." *French v. Daviess Cnty., Ky.*, 376 F. App'x 519, 522 (6th Cir. 2010).

Here, Plaintiff's allegation that Defendant Davis was deliberately indifferent to Plaintiff's complaints of pain by refusing to prescribe any pain medication stronger than Motrin to Plaintiff fails on its face, as the evidence demonstrates that Defendant Davis requested Vicodin and Motrin 800mg for Plaintiff on three separate occasions. Even if Defendant Davis did deny stronger medications to Plaintiff because of his reluctance to prescribe powerful narcotics to prisoners, like that of the prison officials in *French*, Defendant Davis's conduct does not constitute a wanton infliction of pain, especially in light of Plaintiff's history of substance abuse. (*See* docket no. 56-4; docket no. 36-3 at 14.) Essentially, Plaintiff disagrees with Defendant Davis's medical judgment. A disagreement over treatment does not give rise to a constitutional violation. While Plaintiff may disagree with the course of treatment provided by Defendant Davis, he has failed to adduce facts to show that Defendant Davis acted unconstitutionally. Accordingly, Defendant Davis is entitled to qualified immunity and should be awarded summary judgment.

Similarly, Plaintiff's claims for monetary damages against Defendant Davis in his official capacity are equivalent to a suit for damages brought against the MDOC and are barred by the Eleventh Amendment. Therefore, the Court should dismiss Plaintiff's damages claims against Defendant Davis in his official capacity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("[T]he Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities.").

Finally, to the extent that Plaintiff sets forth a state law claim of negligence against Defendant Davis, the Court should decline to address it because Plaintiff's federal claims should be dismissed. 28 U.S.C. § 1367(c) (district courts may decline to exercise supplemental jurisdiction over a claim if all original jurisdiction claims have been dismissed).

### D. Conclusion

For the reasons stated herein, it is recommended that the Court **GRANT** Defendant Dr. Stephen Davis, DDS's Motion for Summary Judgment (docket no. 54) and dismiss Defendant Davis from this action.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: August 4, 2015         s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: August 4, 2015         s/ Lisa C. Bartlett
                              Case Manager