UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIUS WILSON,

       Plaintiff,            CIVIL ACTION NO. 12-cv-15652

   v.                             DISTRICT JUDGE PAUL D. BORMAN

MICHIGAN DEPARTMENT       MAGISTRATE JUDGE MONA K. MAJZOUB
OF CORRECTIONS, et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff filed this *pro se* civil rights action on December 26, 2012, pursuant to 42 U.S.C. § 1983 against the Michigan Department of Corrections (MDOC) and three dentists, Dr. Sorrow, Dr. Davis, and Dr. Williams.[1] (Docket no. 1.) This matter comes before the Court on Defendant Dr. Ronnie Sorrow, D.D.S.'s Second Motion for Summary Judgment. (Docket no. 65.) Plaintiff responded to Defendant Sorrow's Motion (docket no. 66), and Defendant Sorrow replied to Plaintiff's Response (docket no. 67). This action has been referred to the undersigned for all pretrial purposes. (Docket no. 6.) The Court dispenses with oral argument on the motion pursuant to Eastern District of Michigan Local Rule 7.1(f) and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] The Court dismissed Defendant MDOC and Defendant Williams from this action on September 23, 2013. (Docket no. 32.) On November 3, 2013, counsel appeared on behalf of Plaintiff. (Docket no. 34.) In an August 4, 2015 Report and Recommendation, it was recommended that Defendant Davis's Motion for Summary judgment be granted and that Defendant Davis be dismissed from this action. (Docket no. 68.)

**I.     RECOMMENDATION**

For the reasons that follow, it is recommended that Defendant Dr. Ronnie Sorrow, D.D.S.'s Second Motion for Summary Judgment (docket no. 65) be **GRANTED** and that Defendant Sorrow be dismissed from this action. In light of the undersigned's pending Report and Recommendation to grant Defendant Davis's Motion for Summary Judgment (docket no. 68), it is further recommended that this matter be dismissed in its entirety.

**II.    REPORT**

**A.     Background**

*1.     Plaintiff's Claims and Allegations*

Plaintiff has been discharged from the Michigan Department of Corrections; however, the events giving rise to the complaint occurred while he was incarcerated at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan. Plaintiff alleges that he suffered irreparable nerve damage after Defendant Davis broke a needle off in his jaw during a tooth extraction and left it embedded in his gums for five months without providing adequate pain relief. (Docket no. 1 ¶¶ 5, 11.) Plaintiff also alleges that Defendant Sorrow failed to act swiftly to alleviate the pain caused by the embedded needle and to provide immediate medical assistance to remove his tooth and the needle. (*Id*. ¶¶ 57-58). Plaintiff sues Defendant Sorrow for violations of the Eighth Amendment in his individual and official capacities. (*Id*. ¶¶ 54-59.)

Specifically, in his *pro se* Complaint, Plaintiff alleges that he went to JCF's dentist on October 17, 2011 to have a tooth extracted, and in the process of numbing the extraction area, Defendant Davis broke the needle off in his gums. (*Id*. ¶ 11.) Plaintiff says that Defendant Davis had x-rays taken to locate the broken needle and then sent Plaintiff to Allegiance Hospital in Jackson, Michigan to have the needle removed. (*Id*. ¶ 12.) According to Plaintiff, there was

2

no oral surgeon available at that time, so he was sent back to JCF. (*Id*. ¶ 12.) Plaintiff claims that upon his return to JCF, Defendant Davis immediately attempted to contact an oral surgeon at the MDOC's Duane Waters Hospital, and the Hospital scheduled an appointment for Plaintiff for October 27, 2011. (*Id*. ¶ 13.)

Plaintiff alleges that he asked Defendant Davis for something to relieve his pain, but he was not given any pain medication and was in "horrible, terrible pain." (*Id*. ¶ 18.) Plaintiff avers that he could not eat, drink anything cold, or sleep. (*Id*.) Allegedly, after being in extreme pain for two days, on October 19, 2011, Plaintiff sent a kite to Health Care Services to request help for his pain. (*Id*. ¶ 14.) Plaintiff asserts that he received a response to his kite on October 21, 2011 that explained that Plaintiff was "on the list to see the MSP, but no specific date [was] available." (*Id*.) Plaintiff claims that he did not receive any pain medication. (*Id*. ¶ 15.)

According to Plaintiff, he "was seen" on November 2, 2011, but no pain medication was administered. (*Id*. ¶ 19.) Plaintiff admits that he was offered Motrin, but he refused it because "[i]f something is useless, you simply do not take it." (*Id*.) Plaintiff indicates that he sent another kite on November 8, 2011 to inquire about his appointment with an oral surgeon, and he received a response the next day informing him that he had an upcoming appointment to remove the needle from his gums. (*Id*. ¶ 16.) He claims that he did not receive pain medication and that he was in "horrible, agonizing pain with no relief." (*Id*.) Plaintiff alleges that he had a CT scan on or about December 13, 2011, but he still had no pain management or medication, and the needle had become infected. (*Id*. ¶ 17.)

Plaintiff avers that he received a letter from Physician Assistant Aryan K. Taymour on January 24, 2012 that stated that surgery would be too painful under local anesthesia and that surgery had not yet been scheduled, but it should be scheduled soon. (*Id*. ¶ 24.) Plaintiff alleges

that at that point, it had been four months since the needle was broken off in his gums, and he had received no pain medication at all. (*Id*.) Plaintiff claims that Tylenol and other over-the-counter medications were insufficient and useless. (*Id*.)

Next, Plaintiff allegedly sent several more kites. He sent a kite for pain medication because the pain medication he did have ran out on January 18, 2012. (*Id*. ¶ 25.) He sent a kite to inquire when his surgery would take place and allegedly received a response that his appointment had been cancelled. (*Id*. ¶ 26.) He sent a kite on February 6, 2012 to inquire about pain medication. (*Id*. ¶ 27.) Allegedly, Plaintiff then had an appointment with a nurse, who told him that no pain medication would be given, offered him Tylenol, and told him to endure until surgery. (*Id*.) Plaintiff claims that he had another appointment with a nurse on February 12, 2012, who told him that there was nothing he could do. (*Id*. ¶ 28.) Plaintiff asserts that he was in so much pain and agony at that time that he could hardly stand it. (*Id*.)

Plaintiff alleges that he awoke on February 13, 2012 and believed that the needle had shifted because he could not eat or sleep well and he didn't feel comfortable talking to anyone. (*Id*. ¶ 29.) According to Plaintiff, a prison officer contacted Health Care Services on behalf of Plaintiff and was told that there was nothing they could do besides offer Plaintiff Ibuprofen 200mg, which Plaintiff asserts "is useless." (*Id*.) Plaintiff claims that he should have been taking Vicodin or morphine because the pain was so bad. (*Id*.) Plaintiff alleges that he had surgery to remove the needle on February 21, 2012 but that he continued to have pain, heaviness, and numbness in his jaw up to three weeks later. (*Id*. ¶¶ 30-31.)

Plaintiff's Complaint fails to set forth any factual allegations against Defendant Sorrow. Despite the deficiencies in the Complaint, this case has proceeded against Defendant Sorrow because he filed an Answer to the Complaint with affirmative defenses acknowledging that he

was responsible for removing the broken needle from Plaintiff's jaw.  (Docket no. 19.) Defendant Sorrow again states that he provided dental treatment and surgically removed the needle from Plaintiff's jaw in the instant Motion.  (Docket no. 65.)

        2.       *Procedural History*

Defendant Sorrow filed his first Motion for Summary Judgment on June 4, 2013. (Docket no. 25.)  The undersigned reviewed Defendant Sorrow's first motion and concluded that Defendant Sorrow was not entitled to summary judgment on Plaintiff's Eighth Amendment individual capacity claim, but he was entitled to summary judgment on Plaintiff's Eighth Amendment official capacity claim.  (Docket no. 39.)  In recommending the denial of Plaintiff's individual capacity claim against Defendant Sorrow, the undersigned suggested that genuine issues of material fact existed as to whether Defendant Sorrow knew the extent of Plaintiff's pain and needlessly allowed him to suffer, and whether the delay in ordering the CT scan and removing the needle from Plaintiff's jaw constituted deliberate indifference.  (Docket no. 39 at 7-8.)  Neither Plaintiff nor Defendant Sorrow objected to the Report and Recommendation.  On March 4, 2014, the Report and Recommendation was adopted.  (Docket no. 47.)

On July 25, 2014, the Court entered a Scheduling Order setting October 29, 2014 as the dispositive motion cut-off date.  (Docket no. 48.)  The Scheduling Order specifically advised that leave of Court was required to file a second dispositive motion.  (*Id*.)  On August 22, 2014, Defendant Sorrow filed a second Motion for Summary Judgment.  (Docket no. 49.)  Plaintiff subsequently filed a Motion to Strike Defendant Sorrow's second Motion for Summary Judgment on the basis that he filed it without first obtaining leave of court.  (Docket no. 51.)  In a February 7, 2015 Order, the Court granted Plaintiff's Motion and struck Defendant Sorrow's second Motion for Summary Judgment.  (Docket no. 58.)  Defendant Sorrow then filed a Motion

for Leave to File a Second Motion for Summary Judgment on February 19, 2015, which the Court granted on April 23, 2015. (Docket nos. 60 and 64.) Defendant Sorrow filed his Second Motion for Summary Judgment on May 18, 2015; this Motion is currently pending before the Court.

> B.  **Governing Law**

Defendant Sorrow moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket no. 65.) Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury

could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

    **C.**     **Analysis**

To prevail on a § 1983 claim, a plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citations omitted). There is no dispute that Defendant Sorrow was a person acting under color of state law. Thus, the only remaining issue under a § 1983 analysis is whether Defendant Sorrow deprived Plaintiff of a constitutional right.

Both parties have submitted affidavits and copies of Plaintiff's medical records in support of their respective arguments. In his affidavit, Defendant Sorrow states that he is an oral surgeon who was contacted before October 27, 2011 to provide treatment to Plaintiff after Defendant Davis broke off a needle in Plaintiff's jaw during a failed wisdom tooth extraction. (Docket no. 65-2.) He states that he extracted Plaintiff's lower right wisdom tooth on October 27, 2011, but decided that he should leave the needle in place to permit the area to encapsulate in scar tissue, a process known as "scarring in." He states that allowing the needle to "scar in" would minimize potential complications during extraction by preventing it from being pushed further into the soft tissue. He further states that he prescribed Motrin, Vicodin ES, Amoxicillin, and Peridex to Plaintiff on that date.

Defendant Sorrow states that he next examined Plaintiff on November 29, 2011. He claims that during this visit he examined Plaintiff, explained the procedure to remove the needle

and the reason for the delay, ordered a CT scan to assist him in locating the broken needle, and prescribed Ultram to relieve Plaintiff's discomfort. Defendant Sorrow states that his next examination of Plaintiff occurred on January 12, 2012. During this visit, Defendant Sorrow reportedly discussed the procedure for removal of the needle and identified potential surgical complications. He states that he prescribed Vicodin ES when Plaintiff complained that the Ultram he had previously been prescribed was not working to relieve his discomfort. Next, Defendant Sorrow states that he surgically removed the needle on February 21, 2012 without complications and prescribed Motrin, Vicodin ES, Keflex, and Peridex. Defendant Sorrow attests that at a post-operative examination on March 15, 2012, he determined that Plaintiff was healing well without complications. He states that Plaintiff complained of discomfort but denied a need for pain medication. He also contends that Plaintiff complained of mild V3 paresthesia but could differentiate sharp from dull pain. He claims that he had no further communication with Plaintiff after this date.

Defendant Sorrow attests that as a consultant, he was unaware of any prison kites from Plaintiff requesting pain medication. He further states that he did not find it appropriate to prescribe any more than a five or six day supply of Vicodin to Plaintiff because he did not have adequate information regarding whether Plaintiff was likely to abuse drugs. Finally, Defendant Sorrow attests that Plaintiff's surgery was delayed to obtain a CT scan and to insure that the broken needle was encapsulated with scar tissue to make sure that it did not move further into the jaw tissue during extraction.

Plaintiff, in his affidavit, states that after Defendant Davis broke off the needle in his jaw, Defendant Davis told Plaintiff that he was sending him to the emergency department at Allegiance Hospital. (Docket no. 66-4.) Plaintiff says that the tip of the needle was at his gum

8

line and that he could feel it with his finger. Plaintiff states that staff at Allegiance Hospital told him that they did not have an oral surgeon and sent him back to the correctional facility. Plaintiff attests that upon his return to the correctional facility, Defendant Davis told him that Defendant Sorrow would see him in ten days. Plaintiff contends that he read the emergency chart from Allegiance Hospital, which indicates that Dr. Lewis Roger called Defendant Sorrow regarding Plaintiff's condition, and Defendant Sorrow told the doctor that it was not an emergency. Plaintiff counters that "[i]t was obviously an emergency" because he is a diabetic and needs to eat, and chewing caused him a lot of pain and drove the needle deeper. Plaintiff claims that a comparison of the October 17, 2011 x-ray and the December 13, 2011 CT scan shows that the needle had moved deeper into his tissue. He affirms that the pain was greater when he chewed food, and it lasted until the needle was removed in February of 2012. Plaintiff contends that it was obvious that the needle was not "scarring in," and that it was moving and getting deeper.

    Plaintiff further attests that the pain medication Defendant Sorrow prescribed to Plaintiff on October 27, 2011 was for the extraction of his wisdom tooth, not for the pain related to the needle in his jaw. Plaintiff claims that Defendant Sorrow had to have known that leaving the needle in his jaw would cause great pain, and, knowing that, he failed to provide Plaintiff with adequate treatment and pain medication. Plaintiff contends that the delay in the removal of the needle caused the needle to move deeper into his tissue and caused him to suffer "months of pain." He also contends that the delay caused permanent nerve damage "from the need to cut nerves, rather than to just pull it which could, and should, have been done on October 17, 2011." Plaintiff describes the permanent nerve damage as a continuously-watering right eye, numbness in his lower right jaw, and disfigurement on the right side of his face. Finally, Plaintiff states

9

that he has no prison record of drug abuse that would have prohibited Defendant Sorrow from recommending pain medication for more than five or six days.

In light of Plaintiff's *pro se* complaint and the affidavit he submitted with his Response to Defendant Sorrow's Motion, the Court discerns two separate aspects to Plaintiff's claims: (1) Defendant Sorrow was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment by failing to provide him with immediate treatment and delaying the removal of the needle from the tissue in his lower right jaw; and (2) Defendant Sorrow was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment by failing to provide him with adequate treatment for the pain caused by the needle embedded in the tissue of his lower right jaw.[2]

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citing *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)).

To support a claim of deliberate indifference under the Eighth Amendment, a plaintiff must satisfy two components: an objective component, and a subjective component. *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (citing *Harrison v. Ash*, 539 F.3d

---

[2] In his Response to Defendant Sorrow's Motion, Plaintiff clarifies that he is not asserting a claim of medical malpractice in this matter. (Docket no. 66 at 3.)

510, 518 (6th Cir. 2008)).  "Satisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant . . . acted with a sufficiently culpable state of mind.'"  *Quigley v. Toung Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)).

To satisfy the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'"  *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994))).  A sufficiently serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (citations omitted).

To satisfy the subjective component of a deliberate indifference claim and show that the defendant had a sufficiently culpable state of mind, a plaintiff must show that "'the official knows of and disregards' the substantial risk of serious harm."  *Villegas*, 709 F.3d at 569 (quoting *Harrison*, 539 F.3d at 518).  The plaintiff need not prove, however, "that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'"  *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 835).  Instead, a plaintiff must show that (1) the defendant "subjectively perceived facts from which to infer substantial risk to the [plaintiff]," (2) the defendant "did in fact draw that inference," and (3) the defendant "then disregarded that risk."  *Quigley*, 707 F.3d at 681 (citations omitted).

### 1. *Defendant Sorrow's Treatment of the Embedded Needle*

It is undisputed that on October 17, 2011, Defendant Davis broke off a needle in Plaintiff's jaw tissue when administering a local anesthetic prior to the extraction of Plaintiff's

11

wisdom tooth. It is also undisputed that Defendant Sorrow removed the broken needle from Plaintiff's jaw tissue on February 21, 2012. Plaintiff asserts that the presence of the needle in his gums was an emergency and that Defendant Sorrow should have removed it immediately. He asserts that the delay in the removal of the needle constitutes deliberate indifference. Courts examine the effect of the delay in treatment when determining whether a prisoner's medical needs are sufficiently serious. *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (citations omitted). When "[a]n inmate . . . complains that [a] delay in medical treatment rose to a constitutional violation[, he] must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.*; *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

Here, Plaintiff states that Defendant Davis sent Plaintiff to Allegiance Hospital to have the needle removed on the same day that it was broken off in his jaw tissue. (Docket no. 1 ¶ 12.) In so stating, Plaintiff seemingly asserts that the fact that he was sent to the hospital the same day is evidence that his condition constituted an emergency. (Docket no. 66 at 4.) But according to the Allegiance Hospital medical records submitted by Plaintiff, the attending physician contacted Defendant Sorrow, Defendant Sorrow recommended that a panorex x-ray be ordered, Defendant Sorrow reviewed and discussed the results of the panorex x-ray with the attending physician, and they agreed that there was nothing for Defendant Sorrow to do at that time. (Docket no. 66-2 at 4.)

In fact, Defendant Sorrow attests that he made the decision to delay the surgical removal of the broken needle so that he could order a CT scan to pinpoint the location of the needle and to allow time for the needle to encapsulate in scar tissue to prevent the needle from moving further into the tissue during extraction. (*See* docket no. 65-2.) Plaintiff argues that "[i]t is

obvious, to any layman, that something that is moving, caused by chewing and eating, is not going to develop a scar around it," but it will instead move deeper into the tissue. (Docket no. 66 at 4.) Plaintiff argues that "that fact is proven by what actually happened." (*Id*.) To support his argument, Plaintiff submitted the written results of the October 17, 2011 panorex x-ray and the December 13, 2011 CT scan and asserts that a comparison of the two tests shows that the needle had moved and that it was deeper. ((Docket no. 66-3; docket no. 66 at 4; docket no. 66-4 at 3.) A review of these test results, however, does not support Plaintiff's inexpert interpretation. The findings of the CT scan state, "[t]he broken needle is seen just deep to the ramus of the right hemimandible, beginning near the base of the neck of the right mandibular condyle. This was seen on the orthopantogram view of 10/17/2011." (Docket no. 66-3 at 3.) Nothing here suggests that the needle had moved deeper or had not "scarred in."

Finally, Plaintiff argues that the delay in the removal of the needle, which caused the needle to move deeper, is causally connected to the nerve damage that he now suffers, which he describes as a continuously-watering right eye, numbness in his lower right jaw, and disfigurement on the right side of his face. (Docket no. 66 at 4; docket no. 66-4 at 5.) Plaintiff states that "these facts" are supported by his affidavit and his deposition. Plaintiff, however, has not placed any medical evidence into the record that verifies the existence of permanent nerve damage. Because Plaintiff has failed to provide evidence sufficient to support his claim that the delay in treatment had a detrimental effect on his condition, he has not established that the existence of the needle in his jaw tissue was an objectively serious medical need such that the delay of its removal would constitute deliberate indifference by Defendant Sorrow.

Even if Plaintiff's condition was considered sufficiently serious to satisfy the objective component of deliberate indifference, Plaintiff's claim would fail under the subjective

component. Here, Defendant Sorrow, as an oral surgeon, made a decision to delay the removal of the broken needle in Plaintiff's gums so that he could order a CT scan to pinpoint the location of needle and to allow time for the needle to encapsulate in scar tissue. (Docket no. 65-2 at 2.) Defendant Sorrow explains that such a delay would minimize the amount of potential complications related to the movement of the needle during extraction surgery. (*Id*.) Defendant Sorrow supports his decision with an affidavit from Dr. Norman Betts, D.D.S., M.S., a board-certified oral surgeon, who attests that "scarring in" is a standard technique used by oral surgeons in cases of an imbedded needle. (Docket no. 65-3.) Essentially, Plaintiff's argument that the broken needle required immediate treatment is a disagreement with Defendant Sorrow regarding the proper course of treatment. And it is well-established that differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim. *Hill v. Haviland*, 68 F. App'x 603, 604 (6th Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). Thus, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Accordingly, Defendant Sorrow's Motion for Summary Judgment should be granted with regard to this aspect of Plaintiff's claims.

### 2. *Defendant Sorrow's Treatment of Plaintiff's Pain*

This Court previously discussed the objective component of deliberate indifference with regard to Plaintiff's allegations of pain when it addressed Defendant Davis's Motion for Summary Judgment:

> Plaintiff alleges that he "seriously suffered for [f]ive long months waiting to have a broken needle extracted from his jaw, while no pain medication was

> administered that actually worked, leaving Plaintiff in serious and dangerous pain for a [m]an nearly 60 years of age." (Docket no. 1 ¶ 36.) Indeed, "[c]ourts have regularly held that pain can be a 'sufficiently serious' medical need for purposes of a deliberate indifference claim." *Burton v. Kakani*, No. 09-10893, 2011 WL 3330370, at *4 (E.D. Mich. Aug. 3, 2011) (Battani, J.) (citing cases). Defendant neither sets forth his position nor disputes Plaintiff's position regarding this component. Thus, for purposes of this motion, the Court accepts Plaintiff's assertion that the pain he suffered as a result of his dental condition constituted a serious medical need.

(Docket no. 68 at 9.) This same analysis applies to Plaintiff's claims against Defendant Sorrow regarding his treatment of Plaintiff's pain. Accordingly, for purposes of the instant Motion, the objective component of deliberate indifference is satisfied in this aspect.

"In evaluating a deliberate indifference claim, '[w]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment.'" *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir. 1976)). "When a prisoner grounds a constitutional violation on inadequate medical treatment, his claim is viable only if he shows that the treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Burton v. Kakani*, 514 F. App'x 577, 579 (6th Cir. 2013) (quoting *Alspaugh,* 643 F.3d at 169). Ultimately, the court must consider the wide discretion allowed to prison officials in their treatment of prisoners under authorized medical procedures. *See Westlake*, 537 F.2d at 860.

As this Court has previously mentioned, despite Plaintiff's allegations in his *pro se* Complaint, this is not a case where Plaintiff was completely denied pain medication. Plaintiff was issued pain medication by Defendant Davis, Defendant Sorrow, and other medical personnel at JCF during the relevant time period. (*See* docket no. 65-5 at 3, 9, 13, 14.) With regard to Defendant Sorrow's treatment of Plaintiff's pain, Defendant Sorrow asserts that he prescribed pain medication, namely Vicodin, Motrin, and/or Ultram, to Plaintiff at each of his appointments,

except for the last, at which there were not any serious indications of discomfort. (Docket no. 65 at 15, 17.) Defendant Sorrow further asserts that on one occasion, he adjusted the type of medication to a stronger one when Plaintiff indicated that the previously prescribed medication was not working as well. (*Id*. at 17; docket no. 65-2 at 3.) Defendant Sorrow's assertions are supported by the medical evidence before the Court. (*See* docket no. 65-4.) Notably, Plaintiff does not assert that Defendant Sorrow refused any of Plaintiff's requests for pain medication.

Plaintiff does argue, however, that the amount of pain medication prescribed by Defendant Sorrow was inadequate. Specifically, Plaintiff argues that Defendant Sorrow was deliberately indifferent to Plaintiff's need for pain medication because he only prescribed a five to six day supply of medication to Plaintiff each time, knowing that Plaintiff was in constant pain. (Docket no. 66 at 5-6.) Conversely, Defendant Sorrow attests that he did not find it appropriate to prescribe more than a five to six day supply of pain medication, particularly narcotic pain medication, to Plaintiff without having knowledge of Plaintiff's tendency to abuse drugs. (Docket no. 65-2 at 4.)

According to the Sixth Circuit, "[w]here the question is one of administering a highly addictive drug on a continuing basis in the prison setting, the prison staff should have some discretion." *French v. Daviess Cnty., Ky.*, 376 F. App'x 519, 522 (6th Cir. 2010). Moreover, courts in this circuit have found that "there is no constitutional right to receive unlimited narcotic pain medication for an indefinite period of time." *Israfil v. Woods*, No. 1:09-cv-468, 2011 WL 8006371, at *13 (S.D. Ohio Dec. 7, 2011) (citing cases). Rather, the type and quantity of medication prescribed is almost always an issue of medical judgment, which does not rise to the level of a constitutional violation. *Id*. (citing *Westlake*, 537 F.2d at 860 n.5); *see also Schweiger v. Corr. Medical Services, Inc.*, No. 11-15345, 2013 WL 1148443, at *9 (E.D. Mich. Mar. 19,

2013) (Lawson, J.). For these reasons, Plaintiff cannot demonstrate that Defendant Sorrow had a sufficiently culpable state of mind to satisfy the subjective element of deliberate indifference. Accordingly, Defendant Sorrow should be awarded summary judgment.

### D. Conclusion

For the reasons stated herein, it is recommended that the Court **GRANT** Defendant Dr. Ronnie Sorrow, D.D.S.'s Second Motion for Summary Judgment (docket no. 65) and dismiss Dr. Sorrow from this action. In light of the undersigned's pending Report and Recommendation to grant Defendant Davis's Motion for Summary Judgment (docket no. 68), it is further recommended that the Court dismiss this matter in its entirety.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not

later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: February 18, 2016         s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE


### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: February 18, 2016         s/ Lisa C. Bartlett
                                 Case Manager

18